UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

JEWISH PEOPLE FOR THE BETTERMENT OF
WESTHAMPTON BEACH, ARNOLD SHEIFFER,
and ESTELLE LUBLINER,

Plaintiffs,

-against-

THE VILLAGE OF WESTHAMPTON BEACH,
EAST END ERUV ASSOCIATION, VERIZON
NEW YORK INC. and LONG ISLAND LIGHTING
COMPANY d/b/a LIPA,

Defendants.

---------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   JUL 3 0 2012   ★

LONG ISLAND OFFICE

**CV-12-3760**

Civil No.

**COMPLAINT**

**WEXLER, J**

**LINDSAY, M.**

**SUMMONS ISSUED**

**Introduction**

1.     The establishment of an eruv within the Village of Westhampton Beach will constitute a violation of the Establishment Clause of the First Amendment to the United State Constitution and cause real and actual harm to the community and its residents.  The eruv contemplated and intended for imminent construction by Defendant East End Eruv Association ("EEEA"), with the aid and cooperation of defendants Verizon and LIPA, will mark certain wholly public spaces within the Village with religious significance.  Indeed, it will invest a large portion of the Village with a narrow and parochial religious function.  Although proponents of the eruv are quick to tout what they contend is the *nearly* invisible nature of the *lechis* and other components of the eruv, it is those same proponents themselves who insist, based upon their particular interpretation of Jewish law, on the actual physical presence of the eruv.  The eruv, of course, will *not* go unnoticed; rather, it will be a constant and ever-present symbol, message and

1

reminder to the community at large, that the secular public spaces of the Village have been transformed for religious use and identity; to the non-Jewish residents, that the Village and LIPA have given preferred status to the Jewish religion as the only faith permitted to permanently affix religious symbols to utility poles within the Village or to physically demarcate certain public spaces with particular religious significance; and to large portions of the Jewish community within the Village, that one particular form of Judaism has been preferred and endorsed by the Village over another.

2.     Plaintiff Jewish People for the Betterment of Westhampton Beach, Inc., a/k/a JPOE (hereinafter, "JPOE") is opposed to the establishment of an eruv in the Village.  Many of JPOE's members, including Mr. Sheiffer and Ms. Lubliner, are proud and observant Jews who belong to Jewish denominations which do not accept, and in many cases are officially critical of the concept of an eruv as a valid interpretation of Jewish law.  Other JPOE members include individuals who practice other faiths, and individuals of a secular persuasion, all of whom also reasonably view the concept of an eruv as a public symbol of a particular religious belief which they do not accept and which has no place being imposed upon them or endorsed by municipal or other public agencies.

3.     Many Jews reject the very concept of an eruv, and sincerely believe that the particular form of Jewish belief and observance that elevates such legalistic constructs over the true spiritual values of Judaism and the Sabbath is abhorrent to their own religious views and interpretation of Jewish law.  Indeed, it is the official position of the Central Conference of American Rabbis ("CCAR"), the umbrella rabbinical organization of Reform Judaism in the United States, that an eruv is a sort of "legal fiction" which is inconsistent with the true "spirit" of Jewish law. *See CCAR Responsa – 178, Eruv* dated July 1983.

2

4.     JPOE respects the rights of all persons to practice and observe their religions according to the dictates of their own conscience. JPOE does not dispute the right of the EEEA and its members to practice Judaism according to the dictates of their own conscience and beliefs, through whatever private means are at their disposal. JPOE does not ask or expect this Court to prefer or adopt its members' version of Jewish law over the religious views of the EEEA and its adherents, or indeed to intervene in these religious disputes in any manner whatsoever. However, JPOE vigorously disputes the right of the EEEA and its members to impose their views on the rest of the Village by having the symbol of their particular kind of observance permanently affixed to and openly displayed on public property within their communities.

5.     Indeed, the whole point of the eruv, for those who observe it, is to openly and *visibly* demarcate a certain geographic area as a *Jewish* precinct, i.e., a symbolic extension of a *Jewish* home. Moreover, the suggestion that JPOE's members should not be concerned or offended by the prospect of the erection of an eruv to demarcate the neighborhoods where they live and work, because they "won't notice it" or might somehow not understand what it symbolizes, is truly condescending and offensive to JPOE and its members, who will be confronted with the EEEA's religious display on a daily basis.

6.     JPOE and its members do not want to live in a community where their government – i.e, the Village and LIPA itself – is reasonably seen and understood by them as endorsing particular religious beliefs and practices that they do not hold or which they affirmatively oppose.

**Parties**

7.      Plaintiff Jewish People for the Betterment of Westhampton Beach, Inc., a/k/a JPOE (hereinafter, "JPOE") is a not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York.

8.      Arnold Sheiffer ("Sheiffer") is Chairman of JPOE and resides at 5 Oneck Road, Wethampton Beach, New York 11978.

9.      Estelle Lubliner ( "Lubliner") is a member of JPOE and resides at 36 Sweetgrass Road, Westhampton Beach, New York  11978.

10.     Defendant Village of West Hampton Beach is an incorporated village formed and existing pursuant to New York Village Law with offices located at 165 Mill Road, Westhampton Beach, New York 11978.

11.     Upon information and belief, Defendant EEEA is a not-for-profit-corporation formed and operating under the laws of the State of New York with offices at 32 East 57th Street, New York, New York 10022.

12.     Defendant Long Island Lighting Company d/b/a LIPA (hereinafter, "LIPA") is a corporation organized and existing under and by virtue of the laws of the State of New York, with a principal place of business located at 333 Earle Ovington Blvd., Uniondale, New York 11501, and is wholly owned subsidiary of, and is operated and controlled by, the Long Island Power Authority, a New York Public Authority and political subdivision of the State of New York.

13.     Defendant Verizon New York Inc. is a corporation with offices located at 140 West Street, New York, New York 10007; it is a subsidiary of Verizon Communications, Inc., a publicly held corporation.

4

14. Upon information and belief, the constitutional violations alleged herein have been caused by, and permitted by, certain individual officials and/or employees of the Village and of LIPA, the identities of whom shall be a matter for discovery herein, as well as by the policies and practices of said public authorities.

## Jurisdiction and Venue

15. This action arises under the Constitution and laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).

16. This Court has authority to grant the relief sought herein under 28 U.S.C. §§ 2201 and 2202 (declaratory and further relief based upon said declaration), 42 U.S.C. § 1983 (damages for constitutional violations), and 42 U.S.C. § 1988 (attorneys fees).

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because defendant Village of Westhampton Beach is located within this district and all defendants are residents of this State, and pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in this district and because the property and geographical area that is the subject of the action is situated in this district.

## Factual Allegations

### *EEEA Seeks to Establish and Eruv in Westhampton Beach*

18. EEEA intends to erect and establish, imminently, an eruv in the Village of Westhampton Beach.

19. Upon information and belief, an eruv is a continuous physical boundary and visible demarcation of a defined geographic area within which adherents subscribing to a certain

interpretation of Jewish law believe that they may perform certain activities that are otherwise prohibited on the Jewish Sabbath and Yom Kippur.

20.     An eruv may be established, in whole or in part, by the physical attachment of staves, known as *lechis*, to utility poles and wires defining the geographic boundaries of the eruv, or, in any case, in such manner as may be specifically dictated by particular orthodox leaders.

21.     Upon information and belief, the eruv that EEEA contemplates establishing in the Village would largely be formed by attaching lechis, upwards of forty inches in length, to Verizon and LIPA utility poles located within the Village and upon its rights of way.

22.     Upon information and belief, the EEEA and/or those aligned in interest with the EEEA have been pursuing the establishment of an eruv in the Westhampton Beach area for several years.  However, upon further information and belief, the only formal application the eruv proponents ever made to the Village for permission to erect the eruv was later withdrawn. Upon information and belief, a similar application was recently made by the EEEA to the neighboring Village of Quogue and was denied.

23.     Upon information and belief, although the EEEA contends that the location, size, dimension and scope of the eruv is borne out of necessity for same, it has in fact frequently modified and altered the proposed eruv.

*The Eruv Violates the Establishment Clause*

24.     Upon information and belief, according to certain interpretations and practices of Jewish law or religion, the carrying of objects between private and public domains is prohibited on the Sabbath and Yom Kippur.

6

25.     Upon information and belief, according to certain interpretations and practices of Jewish law or religion, an eruv, in concept and application, intends to and does join and mix the private domain and the public domain.

26.     Upon information and belief, according to certain interpretations and practices of Jewish law or religion, those portions of the public domain that are merged with the private domain by virtue of the eruv are thereby transformed such that such public spaces are deemed an extension of the private Jewish residence inclusive of all the religious significance thereof.

27.     An eruv, by its very nature, is inherently a religious symbol, whose physical presence and embodiment has no meaning or significance except as the visual expression and public communication of its adherents' personal, individual interpretation of Jewish law and religious beliefs.

28.     An eruv serves no secular purpose and has no secular meaning or significance.

29.     The eruv is only of any functional relevance to its proponents on the Sabbath and Yom Kippur, *i.e.*, days of particular *religious* significance.

30.     An eruv conveys, and the contemplated eruv in Westhampton Beach will convey, a specific and particularized communicative message to adherents of particular branches of the Jewish faith, signaling to them where, when, and what they may permissibly do in public within their understanding and practice of their religion.

31.     An eruv conveys, and the contemplated eruv in Westhampton Beach will convey, an equally specific and particularized communicative message to the community at large that the governmental authorities, the Village and LIPA, have selected one particular form of Judaism for special and preferential treatment over other religions as well as over secular interests in public spaces.  The establishment and maintenance of an eruv constitutes a public demarcation and

designation of a particular neighborhood or precinct as affiliated with a particular religious group.

32.     An eruv conveys, and the contemplated eruv in Westhampton Beach will convey, an equally specific and particularized communicative message to other practicing and observant Jews who do not share the views or practices of the proponents of the eruv herein; i.e., that they are not "real," "true" or "observant" Jews, and that, in any event and whether they like it or not, the practices of beliefs of other forms of the Judaism are nevertheless imposed upon them since their community has literally and symbolically been surrounded by, defined by, and entangled with the physical indicia and accoutrement of a religion they do not practice.

33.     The establishment of an eruv in the Village serves no secular purpose, reflects a governmental endorsement of a particular form of religious belief and practice, reflects governmental discrimination between religions, reflects a governmental preference for a particular form of religious belief and practice, is coercive in nature to those who do not share the views of the endorsed and favored religious practice, and represents an excessive entanglement between government and religion.

*JPOE Opposes the Eruv*

34.     JPOE's membership consists of approximately 300 Jewish and non-Jewish individuals who reside in the Villages of Westhampton Beach and Quogue, and the Town of Southampton, and their environs, and who are opposed to the installation and establishment of an *eruv* within their communities.

35.     The interpretation of Jewish law which finds its physical expression and embodiment in the establishment of an eruv is rejected and is in fact antithetical to the beliefs of many Jews, including Sheiffer, Lubliner and other members of JPOE, who view it as kind of

8

legalistic interpretation of Jewish law which is inconsistent with the true spiritual interpretation and observance of Judaism.

36.     Upon information and belief, it is the official position of the Central Conference of American Rabbis, the umbrella group of Reform Rabbis in the United States, that the creation of an eruv is a kind of "legal fiction" which is inconsistent with a true spiritual observance of the Jewish Sabbath.

37.     Given the Village's broad and exclusive authority to regulate and control the public rights of way within the Village, and notwithstanding any positions taken, not taken, implied or denied by the Village heretofore, should the eruv be constructed within the Village, the public areas encompassed thereby will be identified as areas designated and marked for and by the use of a particular religious group in a manner not permitted to other religions.

38.     Given the Village's broad and exclusive authority to regulate and control the public rights of way within the Village, and notwithstanding any positions taken, not taken, implied or denied by the Village heretofore, should the eruv be constructed within the Village it will signal and constitute, and be reasonably understood by JPOE's members and the general public as, the Village's endorsement of the particular form of Judaism practiced by the members of EEEA to the exclusion and rejection of the practices of other Jews in the Village.

*Verizon and LIPA*

39.     Defendants Verizon and LIPA maintain and operate utility poles located in the Village of Westhampton Beach.

40.     Upon information and belief, Verizon and LIPA have publicly stated their willingness to allow EEEA to install *lechis* upon their utility poles for the purpose of establishing

9

an eruv in and about the Village of Westhampton Beach and have entered into contracts with EEEA to that effect.

41.     Upon information and belief, on or about May 2010, Verizon entered into a written agreement with EEEA pursuant to which Verizon agreed to permit EEEA to affix *lechis* to Verizon's poles.

42.     Upon information and belief, on or about July 27, 2010, LIPA entered into a written License Agreement with EEEA pursuant to which LIPA agreed to permit EEEA to affix lechis to LIPA's utility poles located within the jurisdictional boundaries of the Villages of Westhampton Beach and Quogue, and the Town of Southampton, for the purpose of establishing and maintaining an *eruv* within the boundaries of said municipalities.

43.     The establishment of an eruv on LIPA poles in the Villages of Westhampton Beach and/or Quogue would provide no secular benefit to such municipalities or to LIPA.

44.     On about January 13, 2011, EEEA and other parties commenced an action in this Court entitled *East End Eruv Association, Inc.et. al. v. The Village of Westhampton Beach et al.,* (11-cv-0213)(the "EEEA action"), seeking declaratory and injunctive relief prohibiting and enjoining the Villages of Westhampton Beach and Quogue, and the Town of Southampton, among other parties, from taking or withholding any public action that would prevent EEEA from constructing and maintaining an *eruv* within the jurisdictional boundaries of said municipalities including, without limitation, preventing and enjoining said municipalities from interfering with LIPA's ability to permit attachment of lechis to its poles located in said municipalities.

45.     Upon information and belief, in commencing the EEEA Action, EEEA acted in concert with LIPA, and with LIPA's foreknowledge and active support, cooperation,

  
acquiescence, for the joint purpose of actively promoting, supporting and compelling the construction and establishment of an *eruv* in the subject municipalities.

46.     On or about January 18, 2011, LIPA, together with Verizon, commenced an action entitled *Verizon New York Inc. v. Village of Westhampton Beach, et al* (11-cv-0252)(the "Verizon action") seeking essentially the identical relief as the EEEA Action, including a demand for declaratory and injunctive relief preventing and enjoining the defendant municipalities from interfering with LIPA's ability to permit attachment of lechis to its poles located in said municipalities.

47.     Upon information and belief, in commencing the Verizon action, LIPA acted in concert with EEEA, and with the EEEA's foreknowledge and active support, cooperation, acquiescence, for the joint purpose of actively promoting and supporting the construction and establishment of an eruv.  Further upon information and belief, the attorneys representing LIPA in the instant action are being paid by, and are acting in concert with and under the direction and control, of EEEA and its attorneys.

48.     Upon information and belief, the simultaneous commencement of the EEEA action and the Verizon action are part of a common plan conceived by EEEA and LIPA, among other parties, to promote and support EEEA's private religious agenda, and to promote and support the construction and establishment of an eruv in the Westhampton Beach area.

### Count I
### (Declaratory Judgment – All Defendants)

49.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 48 as though fully set forth herein.

50.     The establishment of an eruv in the Village serves no secular purpose, reflects a governmental endorsement of a particular form of religious belief and practice, reflects

governmental discrimination between religions and governmental preference for a particular form of religious belief and practice, is coercive in nature to those who do not share the views of the endorsed and favored religious practice, and represents an excessive entanglement between government and religion.

51.     An actual and justiciable controversy exists between the parties as to whether the construction, erection, establishment or maintenance of an eruv within or about the public spaces of the Village of Westhampton Beach constitutes a violation of the Establishment Clause of the First Amendment to the United States Constitution.

52.     An actual and justiciable controversy exists between the parties as to whether the construction, erection, establishment or maintenance of an eruv within or about the public spaces of the Village of Westhampton Beach constitutes a violation of the Article I, Section 3 of the New York State Constitution.

53.     Plaintiffs have no adequate remedy at law.

54.     Accordingly, Plaintiffs are entitled to a Judgment declaring that the use of public property, including but not limited to utility poles within the Village, for the purpose of the construction, erection, establishment or maintenance of an eruv constitutes a violation of the Establishment Clause of the First Amendment to the Constitution of the United States, a violation of the Article I, Section 3 of the New York State Constitution, and a violation of the plaintiffs' rights under thereunder, and as additionally provided by the Fourteenth Amendment to the Constitution of the United States.

## Count II
## (Injunctive Relief – All Defendants)

55.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 54 as though fully set forth herein.

12

56.     Plaintiffs are entitled to a preliminary and permanent injunction prohibiting the
Defendants, each and all, from erecting, constructing, establishing, or maintaining an eruv within
the Village of Westhampton Beach, to the extent that any component parts of said eruv are
located on public property, within public rights of way, or upon existing structures located upon
such public property within the Village, or to the extent that said eruv encloses any public spaces
within the Village, which injunction shall include but not be limited to precluding defendants
from attaching lechis to Verizon or LIPA utility poles located on public rights of way within the
Village.

57.     In the absence of injunctive relief, the constitutionally protected rights of the
plaintiffs will be irreparably damaged.

58.     Plaintiffs have no adequate remedy at law.

## Count III
## (Establishment Clause Violation – Nominal Damages)

59.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1
through 58 as though fully set forth herein.

60.     The establishment of an eruv in the Village serves no secular purpose, reflects a
governmental endorsement of a particular form of religious belief and practice, reflects
governmental discrimination between religions and governmental preference for a particular
form of religious belief and practice, is coercive in nature to those who do not share the views of
the endorsed and favored religious practice, and represents an excessive entanglement between
government and religion.

61.     Defendants have been and are acting under color of law in advancing efforts to
imminently construct and establish an eruv in contravention of the Establishment Clause and in

violation of Plaintiffs' rights thereunder and as further extended by the Fourteenth Amendment to the Constitution of the United States.

## Count IV
### (Declaratory Judgment – LIPA)

62.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 61 as though fully set forth herein.

63.    An actual controversy within the jurisdiction of this Court exists as to whether the use of LIPA-operated utility poles for the purpose of establishing an eruv by permanently affixing lechis thereto constitutes a violation of the Establishment Clause of the First Amendment to the Constitution of the United States.

64.    Plaintiffs have no adequate remedy at law.

65.    Accordingly, Plaintiffs are entitled to a Judgment declaring, adjudging and decreeing that the use of LIPA-operated utility poles for the purpose of establishing an eruv by permanently affixing lechis thereto constitutes a violation of the Establishment Clause of the First Amendment to the Constitution of the United States.

## Count V
### (Establishment Clause Violation – LIPA)

66.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 65 as though fully set forth herein.

67.    LIPA's actions complained of herein violate, and have violated, plaintiffs' constitutionally protected rights under the Establishment Clause of the United States Constitution.

68.     LIPA has acted under the color of state law to deprive plaintiffs of its rights, privileges, and immunities secured by the Constitution and laws of the United States in violation of 42 U.S.C § 1983.

69.     LIPA was and is motivated by an intent to interfere with plaintiffs' civil rights, and at all times was aware that it was acting in violation of the United States Constitution and federal law.

70.     As a result of the foregoing, plaintiffs have suffered damage and have been injured, and are entitled to nominal damages and to the recovery of their attorneys' fees in this action.

**WHEREFORE**, plaintiffs demand judgment as follows:

(a)     Declaring, adjudging and decreeing that the use of public property, including but not limited to utility poles within the Village of Westhampton Beach, for the purpose of the construction, erection, establishment or maintenance of an eruv constitutes a violation of the Establishment Clause of the First Amendment to the Constitution of the United States, a violation of the Article I, Section 3 of the New York State Constitution, and a violation of the plaintiffs' rights under thereunder.

(b)     Preliminarily and Permanently enjoining the Defendants, each and all, from erecting, constructing, establishing, or maintaining an eruv within the Village of Westhampton Beach, to the extent that any component parts of said eruv are located on public property, within public rights of way, or upon existing structures located upon such public property within the Village, or to the extent that said eruv encloses any public spaces within the Village, which injunction shall include

but not be limited to precluding defendants from attaching lechis to Verizon or LIPA utility poles located on public rights of way within the Village.

(c)    Awarding Plaintiffs nominal damages for the defendants' violation of plaintiffs' constitutional rights pursuant to 42 U.S.C. 1983;

(d)    Declaring, adjudging and decreeing that the use of LIPA-operated utility poles for the purpose of establishing an eruv by permanently affixing lechis thereto constitutes a violation of the Establishment Clause of the First Amendment to the Constitution of the United States.

(e)    Awarding Plaintiffs nominal damages for LIPA's particular violation of plaintiffs' constitutional rights (Count V) pursuant to 42 U.S.C. 1983;

(f)    Awarding Plaintiffs their reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988;

(g)    Granting such other and further relief and the Court deems just and proper.

Dated: Central Islip, New York
July 30, 2012

SINNREICH KOSAKOFF & MESSINA LLP

By:_____
Jonathan Sinnreich, Esq.
267 Carleton Avenue, Suite 301
Central Islip, New York 11722
(631) 650-1200

*Attorneys for Plaintiffs*
*Jewish People for the Betterment of*
*Westhampton Beach, Inc., Arnold*
*Sheiffer and Estelle Lubliner*

16